UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
NATIONAL INDEMNITY COMPANY,

                                        Plaintiff,

                                                        No. 08 Civ. 4067 (RWS)
                    -against-                           (ECF Case)

GREENWICH STREET INVESTMENTS II,
L.L.C., GREENWICH STREET CAPITAL
PARTNERS II, L.P., DP HOLDINGS L.L.C.,
DUKES PLACE HOLDINGS L.L.C., DUKES
PLACE HOLDINGS LTD., DUKES PLACE
HOLDINGS, L.P., ENSTAR GROUP LTD.,
and ENSTAR (US) INC.,

                                        Defendants.
-----------------------------------------------------------X

---

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
COUNTS I, III AND V OF THE COMPLAINT PURSUANT TO RULE 12(b)(6)

---

RIKER DANZIG SCHERER HYLAND &
    PERRETTI LLP
500 Fifth Avenue, 49th Floor
New York, New York 10110
(212) 302-6574

                    –and –

HARGRAVES MCCONNELL &
    COSTIGAN, P.C.
The Graybar Building
420 Lexington Avenue
New York, New York 10170
(212) 218-8760

Attorneys for Defendants Greenwich Street
Investments II, L.L.C., Greenwich Street Capital
Partners II, L.P., DP Holdings L.L.C., Dukes
Place Holdings L.L.C., Dukes Place Holdings
Ltd., Dukes Place Holdings, L.P., Enstar Group
Ltd. and Enstar (US) Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

THE ALLEGATIONS OF THE COMPLAINT ................................................................ 5

LEGAL ARGUMENT........................................................................................................ 7

I.      THE RULE 12(B)(6) STANDARD................................................................... 7

II.     THE COURT SHOULD DISMISS NICO'S CLAIMS AGAINST ENSTAR US
        FOR BREACH OF THE REINSURANCE AGREEMENTS BECAUSE
        ENSTAR US HAS NOT ASSUMED OR RECEIVED AN ASSIGNMENT OF
        THE COMPANIES' OBLIGATIONS UNDER THE REINSURANCE
        AGREEMENTS.................................................................................................... 8

        A.      Enstar US Has Not Assumed The Companies' Obligations
                Under The Reinsurance Agreements ...................................................... 9

        B.      Enstar US Has Not Received An Assignment Of The
                Companies' Obligations Under The Reinsurance
                Agreements ............................................................................................ 12

III.    THE COURT SHOULD DISMISS NICO'S VEIL-PIERCING CLAIMS
        AGAINST THE GSC AND DUKES PLACE DEFENDANTS FOR FAILURE
        TO ADEQUATELY PLEAD SUCH A CLAIM................................................. 14

        A.      The Complaint Fails To Allege Sufficient Facts To Satisfy
                The "Domination And Control" Prong Of NICO's Veil-
                Piercing Burden .................................................................................... 15

        B.      The Complaint Fails To Adequately Plead A "Fraud or
                Wrong"................................................................................................... 20

IV.     THE COURT SHOULD DISMISS ANY CLAIMS AGAINST ENSTAR GROUP
        LIMITED IN COUNTS I AND III OF THE COMPLAINT DUE TO THE
        ABSENCE OF ANY IDENTIFIED THEORY OF LIABILITY ....................... 22

V.     THE COURT SHOULD DISMISS COUNT V OF THE COMPLAINT AS
       REDUNDANT OF COUNT IV..........................................................................................23

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

Am. Fuel Corp. v. Utah Energy Dev. Co.,
        122 F.3d 130, 134 (2d Cir. 1997)................................................................18, 19

Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano,
        No. 03-CV-0015 (RWS) 2006 U.S. Dist. LEXIS 49161
        (S.D.N.Y. July 7, 2006) .....................................................................15, 17, 19

Bridgestone/Firestone, Inc. v. Recovery Credit Card Servs., Inc.,
        98 F.3d 13 (2d Cir. 1996)................................................................................16

Calcutti v. SBU, Inc.,
        224 F. Supp. 2d 691 (S.D.N.Y. 2002)............................................................21

Castlewood v. National Indem. Co.,
        No. 06-CV-6842 (KMK), 2006 U.S. Dist. LEXIS 77634
        (S.D.N.Y. Oct. 24, 2006) ...................................................2, 3, 10, 11, 12, 13

Chimart Assocs. v. Paul,
        66 N.Y.2d 570, 489 N.E.2d 231, 498 N.Y.S.2d 344
        (1986)...............................................................................................................9

Concesionaria DHM, S.A. v. Int'l Fin. Corp.,
        307 F. Supp. 2d 553 (S.D.N.Y. 2004)............................................................24

Crabtree v. Tristar Auto. Group, Inc.,
        776 F. Supp. 155 (S.D.N.Y. 1991) ...................................................................8

In re Currency Conversion Fee Antitrust Litig.,
        265 F. Supp. 2d 385 (S.D.N.Y. 2003).................................................16, 17, 19

De Jesus v. Sears, Roebuck & Co.,
        87 F.3d 65 (2d Cir. 1996)..................................................................................8

Deutsch v. Hewes Street Realty Corp.,
        359 F.2d 96 (2d Cir. 1966)................................................................................2

EED Holdings v. Palmer Johnson Acquisition Corp.,
        228 F.R.D. 508 (S.D.N.Y. 2005) .........................................7, 14, 15, 16, 17, 19

Goldblatt v. Englander Communications, L.L.C.,
        No. 06-C 2007 U.S. Dist. LEXIS 4278 (S.D.N.Y. Jan. 22, 2007)...............7, 24

Gregory v. Daly,
            243 F.3d 687 (2d Cir. 2001)...........................................................................7

Gryl ex rel. Shire Pharms. Group PLC,
            298 F.3d 136 (2d Cir. 2002)...........................................................................8

Huntington Dental & Med. Co. v. Minnesota Mining & Mfg. Co.,
            No. 95-CV-10959 (JFK), 1998 U.S. Dist. LEXIS 1526
            (S.D.N.Y. Feb. 13, 1998) ...............................................................................8

Impulse Mktg. Group, Inc. v. National Small Bus. Alliance, Inc.,
            No. 05-CV-7776 (KMK), 2007 U.S. Dist. LEXIS 42725
            (S.D.N.Y. June 11, 2007).........................................................................8, 12

Kronos, Inc. v. AVX Corp.,
            81 N.Y.2d 90, 612 N.E.2d 289, 595 N.Y.S.2d 931 (1993).......................23, 24

Lee v. Marvel Enters.,
            386 F. Supp. 2d 235 (S.D.N.Y. 2005)..............................................................9

Leon v. Martinez,
            84 N.Y.2d 83, 638 N.E.2d 511, 614 N.Y.S.2d 972 (1994).............................13

Mellencamp v. Riva Music, Ltd.,
            698 F. Supp. 1154 (S.D.N.Y. 1988)...............................................................11

Mills v. Polar Molecular Corp.,
            12 F.3d 1170 (2d Cir. 1993).............................................................................8

Mina Inv. Holdings Ltd. v. Lefkowitz,
            51 F. Supp. 2d 486 (S.D.N.Y. 1999)................................................................8

Morris v. N.Y. State Dep't of Taxation and Fin.,
            82 N.Y.2d 135, 141, 623 N.E.2d 1157,
            603 N.Y.S.2d 807 (1993).............................................................14, 15, 20, 22

OneBeacon Ins. Co. v. Forman Int'l, Ltd.,
            No. 04-CV-2271 (RWS), 2005 U.S. Dist. LEXIS 648 (S.D.N.Y. Jan.
            19, 2005) .....................................................................................................7, 8

Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.,
            156 A.D.2d 550, 549 N.Y.S.2d 57 (2d Dep't 1989)..........................................8

Rothman v. Gregor,
            220 F.3d 81 (2d Cir. 2000)..............................................................................7

Rozsa v. May Davis Group, Inc.,
      152 F. Supp. 2d 526 (S.D.N.Y. 2001)................................................................7

Rupert v. Sellers,
      65 A.D.2d 473, 411 N.Y.S.2d 75 (4th Dep't 1978)........................................24

Sahu v. Union Carbide Corp.,
      No. 04-CV-8825 (JFK), 2006 U.S. Dist. LEXIS 84475
      (S.D.N.Y. Nov. 20, 2006) ..................................................................... *passim*

Scheuer v. Rhodes,
      416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)......................................7

Spanierman Gallery, PSP v. Love,
      No. 03-CV-3188 (VM), 2003 U.S. Dist. LEXIS 19511
      (S.D.N.Y. Oct. 31, 2003) ...............................................................................24

Sun Micro Med. Techs. Corp. v. Passport Health Cmtys., Inc.,
      No. 06-CV-2083 (RWS), 2007 U.S. Dist. LEXIS 56686
      (S.D.N.Y. July 31, 2007) ...............................................................................21

Sweet v. Sheahan,
      235 F.3d 80 (2d Cir. 2000)...............................................................................7

Thrift Drug, Inc. v. Universal Prescription Adm'rs,
      131 F.3d 95 (2d Cir. 1997).............................................................................14

Torcik v. The Chase Manhattan Bank, Inc.,
      No. 05-5144, 2006 U.S. App. LEXIS 30262
      (2d Cir. Dec. 7, 2006) ...................................................................................24

Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.,
      933 F.2d 131 (2d Cir. 1991)....................................................................15, 16

## STATUTES AND RULES

Fed. R. Civ. P. 8(a) ...............................................................................3, 15, 19

Fed. R. Civ. P. 12(b)(1)................................................................................2

Fed. R. Civ. P. 12(b)(2)..............................................................................12

Fed. R. Civ. P. 12(b)(6).......................................................................... *passim*

Fed. R. Evid. 201 ....................................................................................21

## TREATISES

2 Moore's Federal Practice § 12.34[1][a] ......................................................................7

Restatement (Second) of Contracts § 317(1) (1981) ..................................................12

## PRELIMINARY STATEMENT

Defendants Greenwich Street Investments II, L.L.C., Greenwich Street Capital Partners II, L.P., DP Holdings L.L.C., Dukes Place Holdings L.L.C., Dukes Place Holdings Ltd., Dukes Place Holdings, L.P. (collectively, the "GSC and Dukes Place Defendants"), Enstar Group Ltd. and Enstar (US) Inc. ("Enstar US") respectfully submit this memorandum of law in support of their motion to dismiss Counts I, III and V of the Complaint.

The Complaint filed by plaintiff National Indemnity Company ("NICO") in this action arises out of NICO's contractual agreements to reinsure the liabilities of Seaton Insurance Company ("Seaton") and Stonewall Insurance Company ("Stonewall"). Because each of these reinsurance agreements includes a broad arbitration clause, NICO may only pursue claims against Seaton and Stonewall in arbitration proceedings. Rather than pursue arbitration, NICO has filed this suit against (1) Enstar US – the current administrator of Seaton and Stonewall, (2) the GSC and Dukes Place Defendants – certain parent entities above Seaton's and Stonewall's owner, Stonewall Acquisition Corporation, and (3) Enstar Group Limited – the ultimate parent of Enstar US.

At the heart of NICO's Complaint is a single contention: that the defendants engaged in a scheme to force NICO to "give up its contract right" under the reinsurance agreements "to be Claims Servicer" of Seaton and Stonewall. (See Complaint ¶¶ 64, 73-75; see also id., Count I ¶ 121, Count II ¶ 126, Count III ¶ 131, Count IV ¶¶ 136-139 and Count V ¶¶ 143-145). That NICO would commence a federal court lawsuit based on such an allegation is curious, since NICO has never relinquished or been forced to relinquish its contract rights as Claims Servicer. Indeed, NICO continues to remain Claims Servicer of Seaton and Stonewall to

the present day. Thus, if the defendants have engaged in a scheme, as NICO's Complaint alleges, the scheme has wholly failed to cause any damages to NICO.

While NICO's Complaint fails to state a cognizable claim for damages, defendants do not move at this time for dismissal pursuant to Rule 12(b)(1) for failure to meet the amount in controversy requirement due to the general rule in the Second Circuit permitting unliquidated tort claims to survive a Rule 12(b)(1) motion. See Deutsch v. Hewes Street Realty Corp., 359 F.2d 96, 99-100 (2d Cir. 1966). Defendants, however, do seek dismissal of Counts I, III and V pursuant to Rule 12(b)(6).

In Count I of the Complaint, NICO alleges claims for breach of fiduciary duty against all of the defendants. NICO predicates this claim on a clause within the reinsurance agreements – Article 18 – which imposes a fiduciary duty on Seaton and Stonewall (collectively, the "Companies") to act in "utmost good faith to the interests" of NICO. Count III of the Complaint repeats this same claim, only styling the Count as a breach of contract claim against Enstar US. Although none of the defendants are parties to the reinsurance agreements, the Complaint purports to assert claims against the defendants for breach of Article 18 on two legal theories.

First, as respects Enstar US, the Complaint alleges that NICO may state a claim for breach of Article 18 because Enstar US purportedly "assumed" the Companies' obligations under the reinsurance agreements when Enstar US entered into administration agreements with the Companies. (See Complaint ¶¶ 119, 129-130). As this Court has determined in a prior proceeding, however, Enstar US (formerly known as Castlewood US) did not assume or receive an assignment of the Companies' obligations under the reinsurance agreements when it entered into the administration agreements with Seaton and Stonewall. See Castlewood v. National

Indem. Co., No. 06 Civ. 6842 (KMK), 2006 U.S. Dist. LEXIS 77634, **18-20 (S.D.N.Y. Oct. 24, 2006).  Rather, Enstar US simply agreed with Seaton and Stonewall to administer the reinsurance agreements consistent with the Companies' rights and obligations under those agreements.  Even after Enstar US and the Companies entered into the administration agreements, all of the Companies' rights and obligations under the reinsurance agreements remained solely vested with the Companies.  As such, NICO cannot state a claim against non-signatory Enstar US for breach of Article 18.  The Court should therefore dismiss Counts I and III against Enstar US.

Second, as respects the GSC and Dukes Place Defendants, the Complaint purports to assert a claim for breach of Article 18 on a veil-piercing theory.  Specifically, the Complaint alleges that Seaton and Stonewall (i) had no employees, and (ii) "were at all times dominated and controlled by their owners and parent corporations," i.e., the GSC and Dukes Place Defendants. (See Complaint ¶ 118).  These conclusory allegations, however, clearly do not suffice to state a claim based on a veil-piercing theory of liability, even under the liberal pleading standard of Rule 8(a).  Indeed, under New York law, to avoid dismissal, a party seeking application of the veil-piercing doctrine must plead specific *factual allegations* showing that the owners (1) exercised complete domination and control over the subject corporation, *and* (2) through such domination and control, abused the corporate form of the subject corporation to commit a *fraud or wrong* that injured the plaintiff.

Here, NICO's Complaint fails to satisfy either component of the threshold pleading standard.  At the outset, aside from alleging that Seaton and Stonewall had no employees – an allegation that by itself provides no grounds to pierce the corporate veil – the Complaint is devoid of any factual allegations to support the conclusion that the GSC and Dukes

Place Defendants exercised "domination and control" over the Companies. The Complaint thus provides no indication that it has satisfied the "core requirement" of veil-piercing liability, that is, direct intervention by the parent in the management of the subsidiary to such an extent that the subsidiary's paraphernalia of incorporation, directors and officers are completely ignored.

Likewise, as to the second element of the pleading standard, the Complaint fails to allege that the GSC and Dukes Place Defendants "abused" the corporate form of Seaton and Stonewall to perpetrate a fraud or wrong against NICO. This deficiency is not simply a matter of inartful drafting. Indeed, as this Court has previously recognized, an inference of abuse does not arise where, as here, the subject corporation was formed for legal purposes or is engaged in legitimate business. Because NICO's Complaint fails to satisfy either component of the rigorous veil-piercing standard, the Court should dismiss Count I of the Complaint against the GSC and Dukes Place Defendants.

Two remaining points: First, although NICO has named Enstar Group Limited as a defendant in Count I (and possibly in Count III), the Complaint fails to identify any theory of liability upon which NICO may state a claim against Enstar Group Limited, the ultimate parent of Enstar US, for breaching Article 18. As such, the Court should dismiss any claims against Enstar Group Limited in Counts I and III of the Complaint.

Second, the Court should dismiss Count V of the Complaint as redundant of Count IV. In Counts IV and V of the Complaint, NICO alleges claims for, respectively, interference with contract and inducing breach of contract. The Complaint predicates both of these claims on essentially the same allegations. New York law, however, does not recognize distinct causes of action for interference with contract and inducing breach of contract. Accordingly, the Court should dismiss Count V of the Complaint as redundant of Count IV.

For all of the above reasons, and the reasons more fully stated herein, the Court should dismiss Counts I, III and V of the Complaint pursuant to Rule 12(b)(6).

## THE ALLEGATIONS OF THE COMPLAINT

As noted above, NICO structures its Complaint around the central allegation that the defendants engaged in a scheme to force NICO to "give up its contract right" under the reinsurance agreements "to be Claims Servicer" of Seaton and Stonewall  (See Complaint ¶¶ 64, 73-75; see also id. at Count I ¶ 121, Count II ¶ 126, Count III ¶ 131, Count IV ¶¶ 136-139 and Count V ¶¶ 143-145).  The Complaint seeks unspecified damages resulting from this purported scheme even though NICO has never relinquished or been forced to relinquish its contract rights as Claims Servicer.  (See, e.g., Complaint ¶¶ 112-113 (noting that the arbitration panels ruled in favor of NICO and that such rulings were confirmed as judgments); Judgments annexed to Declaration of John R. Vales ("Vales Dec.") at Exs. 1 & 2 (confirming arbitration rulings granting NICO's request to "continue" as Claims Servicer)).  Indeed, NICO continues to remain Claims Servicer of Seaton and Stonewall to the present day.  (see id.)

The Complaint includes five counts.  In Count I of the Complaint, NICO alleges claims against all of the defendants for breach of fiduciary duty.  As to the source of this alleged fiduciary duty, the Complaint relies upon Article 18 of the reinsurance agreements, which imposes a fiduciary duty on Seaton and Stonewall and the Companies' Claims Servicer to act in "utmost good faith to the interests" of NICO.  (See Complaint ¶ 118, and Exs. A & B thereto).  Although Article 18 does not expressly apply to any of the defendants, the Complaint offers two legal theories for extending this same fiduciary duty to the defendants.

First, as respects Enstar US, Count I of the Complaint alleges that NICO may state a claim for breach of Article 18 based on an assumption theory:

> Upon entering into the Castlewood Administration Agreements, [Enstar US] agreed to administer the Reinsurance Agreements in accordance with Seaton's and Stonewall's fiduciary duties to NICO. [Enstar US] therefore assumed a fiduciary duty to NICO under the Reinsurance Agreements.

(Id. ¶ 119). Count III of the Complaint repeats essentially the same assumption contention. (See id. ¶¶ 129-130 ("Pursuant to Castlewood's assumption of a fiduciary duty to NICO . . .")).

Second, as respects the GSC and Dukes Place Defendants, the Complaint alleges that NICO may state a claim for breach of Article 18 on a veil-piercing theory:

> Because Seaton and Stonewall had no employees, they were at all times dominated and controlled by their owners and parent corporations, [the GSC and Dukes Place Defendants]. By dominating and controlling Seaton and Stonewall, these Defendants were obligated to uphold the fiduciary duties owed to NICO by Seaton and Stonewall.

(Id. ¶ 118). The Complaint makes no further allegations in support of its veil-piercing claim. As noted above, the Complaint fails to identify any theory for applying Article 18 to Enstar Group Limited, the ultimate parent of Enstar US.

In the remaining counts of the Complaint, NICO asserts claims against all of the defendants for (i) aiding and abetting an alleged breach of fiduciary duty by the Companies and Enstar US (see id. at Count II)[1], (ii) interference with contract, i.e., the reinsurance agreements (see id. at Count IV), and (iii) inducing breach of contract, i.e., the reinsurance agreements (see id. at Count V). The Complaint predicates Counts IV and V on essentially the same allegations.

---

[1] Should the Court grant Defendants' motion to dismiss Counts I, III and V, the Court should also strike those allegations contained in Count II, paragraph 126 alleging that defendants aided and abetted a breach of fiduciary duty by Enstar US, for the Court would have necessarily concluded that Enstar US lacks a fiduciary duty to NICO.

## **LEGAL ARGUMENT**

### I.    **THE RULE 12(B)(6) STANDARD**

Any defendant to a complaint may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." 2 Moore's Federal Practice § 12.34[1][a] (Matthew Bender 3d ed.) (quoting Fed. R. Civ. P. 12(b)(6). For purposes of a motion to dismiss, the Second Circuit "has deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Rozsa v. May Davis Group, Inc., 152 F. Supp. 2d 526, 530 (S.D.N.Y. 2001) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)); accord Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

The standard for review of a defendant's motion to dismiss under Rule 12(b)(6) is well settled.  OneBeacon Ins. Co. v. Forman Int'l, Ltd., No. 04 Civ. 2271 (RWS), 2005 U.S. Dist. LEXIS 648, *6 (S.D.N.Y. Jan. 19, 2005).  Dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. (quoting Harris v. City of N.Y., 186 F.3d 243, 250 (2d Cir. 1999)); accord EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 511 (S.D.N.Y. 2005) (quoting Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000)); Goldblatt v. Englander Communications, L.L.C., No. 06 Civ. 3208 (RWS), 2007 U.S. Dist. LEXIS 4278, **8-9 (S.D.N.Y. Jan. 22, 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

On a motion to dismiss under Rule 12(b)(6), courts presume that all well-pleaded allegations are true, resolve all doubts and inferences in the pleader's favor, and view the complaint in the light most favorable to the non-moving party.  OneBeacon Ins. Co., supra, 2005

U.S. Dist. LEXIS 648, at *7 (citing <u>Gryl ex rel. Shire Pharms. Group PLC</u>, 298 F.3d 136, 140 (2d Cir. 2002), <u>cert. denied</u>, 537 U.S. 1191, 123 S. Ct. 1262, 154 L. Ed. 2d 1024 (2003)); <u>see also</u> <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993).

However, a complaint consisting merely of conclusory allegations unsupported by factual assertions cannot meet even the liberal requirements of Rule 12(b)(6).  <u>Mina Inv. Holdings Ltd. v. Lefkowitz</u>, 51 F. Supp. 2d 486, 489 (S.D.N.Y. 1999) (citing <u>De Jesus v. Sears, Roebuck & Co.</u>, 87 F.3d 65, 70 (2d Cir. 1996)).  Similarly, a complaint "must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory."  <u>Id.</u> (quoting <u>Huntington Dental & Med. Co. v. Minnesota Mining & Mfg. Co.</u>, No. 95 Civ. 10959 (JFK), 1998 U.S. Dist. LEXIS 1526, *9 (S.D.N.Y. Feb. 13, 1998)).

## II.	THE COURT SHOULD DISMISS NICO'S CLAIMS AGAINST ENSTAR US FOR BREACH OF THE REINSURANCE AGREEMENTS BECAUSE ENSTAR US HAS NOT ASSUMED OR RECEIVED AN ASSIGNMENT OF THE COMPANIES' OBLIGATIONS UNDER THE REINSURANCE AGREEMENTS

In Counts I and III of its Complaint, NICO alleges claims against non-signatory Enstar US for breaching Article 18 of the reinsurance agreements.  In <u>Impulse Marketing Group, Inc. v. National Small Business Alliance, Inc.</u>, No. 05 Civ. 7776 (KMK), 2007 U.S. Dist. LEXIS 42725, *15 (S.D.N.Y. June 11, 2007), this Court acknowledged that "[i]t is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract."  <u>Id.</u> (citing <u>Crabtree v. Tristar Auto. Group, Inc.</u>, 776 F. Supp. 155, 166 (S.D.N.Y. 1991); <u>Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.</u>, 156 A.D.2d 550, 549 N.Y.S.2d 57, 58 (2d Dep't 1989)).

Thus, because Enstar US is not a signatory to the reinsurance agreements, NICO may only state a claim against Enstar US for breach of the reinsurance agreements if it has assumed or received an assignment of the Companies' obligations thereunder.  For the reasons

stated below, NICO's contract claims against Enstar US necessarily must fail because Enstar US
has not assumed or received an assignment of the Companies' obligations under the reinsurance
agreements.

**A.    Enstar US Has Not Assumed The Companies' Obligations Under The
Reinsurance Agreements**

In Count I of the Complaint, NICO contends that Enstar US *assumed* the
Companies' obligations under the reinsurance agreements when it entered into administration
agreements with the Companies and agreed thereunder to "administer the Reinsurance
Agreements in accordance with Seaton's and Stonewall's obligations under the Reinsurance
Agreements."  (Complaint, Count I ¶ 119).  NICO reiterates essentially the same contention in
Count III.  (see id. at Count III ¶¶ 129-120).  In making these contentions, NICO implicitly relies
on Section 2.2 of the administration agreements (copies of which NICO attached to its
Complaint at Exhibits C and D).  Section 2.2 of the administration agreements, however, plainly
does not cause Enstar US to assume the Companies' obligations under the reinsurance
agreements.[2]

Section 2.2 of the Seaton Administration Agreement states in relevant part:

[Enstar US] warrants that it has read the Reinsurance Agreements
in their entirety, that the Reinsurance Agreements create various
rights and obligations with respect to the Run-Off Business
between [Seaton], on the one hand, and [NICO], on the other, and
that [Enstar US] *will at all times cause the services to be
performed in a manner consistent with [Seaton's] rights and
obligations under the Reinsurance Agreements*. . . .

---

[2] Under New York law, the interpretation of an unambiguous contract provision is a question of law for the Court.
See, e.g., Lee v. Marvel Enters., 386 F. Supp. 2d 235, 243 (S.D.N.Y. 2005) (citing Chimart Assocs. v. Paul, 66
N.Y.2d 570, 572, 489 N.E.2d 231, 498 N.Y.S.2d 344 (1986)).  "Contract language is only ambiguous when, viewed
objectively, more than one meaning may reasonably be ascribed to the language used."  Id. at 244 (citations
omitted).

(Id. at Ex. D, § 2.2). (emphasis added).  Section 2.2 of the Stonewall Administration Agreement similarly provides:

> [Enstar US] warrants that it has read the Reinsurance Agreement in its entirety, that the Reinsurance Agreement creates various rights and obligations with respect to the Run-Off Business between [Stonewall], on the one hand, and [NICO], on the other, and that [Enstar US] *agrees to administer the Reinsurance Agreement consistent with [Stonewall's] rights and obligations under the Reinsurance Agreement*. . . .

(Id. at Ex. C, § 2.2) (emphasis added).  Under Section 2.2 of each administration agreement, Enstar US agreed to perform its run-off management services in a manner **consistent with** the Companies' rights and obligations under the reinsurance agreements.  Nowhere in Section 2.2 does Enstar US agree to *assume* the Companies' obligations under the reinsurance agreements.

Indeed, this very Court has previously examined the administration agreements and concluded that Enstar US did not assume Seaton's and Stonewall's obligations under the reinsurance agreements.  In Castlewood v. National Indemnity Co., No. 06 Civ. 6842 (KMK), 2006 U.S. Dist. LEXIS 77634 (S.D.N.Y. October 24, 2006), Enstar US (then known as Castlewood US), Seaton and Stonewall sought a preliminary injunction enjoining NICO from making Enstar US a respondent in arbitration proceedings brought by NICO against Seaton and Stonewall pursuant to the arbitration provision of the reinsurance agreements.  Id.  NICO opposed the application on the grounds that, inter alia, Section 2.2 of the administration agreements reflected Enstar US' assumption of Seaton's and Stonewall's obligations to arbitrate under the reinsurance agreements.  Id. at *18.  This Court, however, rejected NICO's contentions:

> In a variation on the assumption exception, NICO argues that one
> section (section 2.2 - quoted above) in each of the Administration
> Agreements reflects Castlewood's assumption of Seaton's and
> Stonewall's obligation to arbitrate. . . . . [G]iven the facts at issue
> here, these cases [cited by NICO in support of its contentions] are
> inapposite. . . . Here, neither Seaton nor Stonewall has assigned
> any rights to Castlewood. Rather, they have contracted to ensure
> that Castlewood will not do anything that will cause either Seaton
> or Stonewall to breach the Reinsurance Agreements. If
> Castlewood does cause either insurer to breach, then those insurers
> have a right, under the Administration Agreements, to seek relief
> against Castlewood. However, nothing in this section obligates
> Castlewood to meet NICO in an arbitration hearing. . . . .

Id. at **18-20. This Court thus summarily rejected NICO's arguments that Enstar US assumed

or received an assignment of Seaton's and Stonewall's obligations under the reinsurance

agreements through Section 2.2 of the administration agreements.

This Court's prior determination that Enstar US did not assume the Companies'

obligations under the reinsurance agreements by entering into the administration agreements

comports with the established precedent of this Court. For example, in Mellencamp v. Riva

Music, Ltd., 698 F. Supp. 1154, 1160 (S.D.N.Y. 1988), certain non-signatory defendants moved

to dismiss the contract claims against them on grounds that they were not parties to the

publishing agreements the subject of the breach of contract claims. In granting the non-signatory

defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court rejected the argument that

assistance in the administration of a contract may make a non-signatory liable under the contract,

stating, "The Court is unaware of any authority . . . to support plaintiff's assertion that these two

defendants may be liable for the breach of contract which they are strangers simply . . . because

they assisted the other corporate defendants in the administration of the Mellencamp publishing

agreements." Id. Here, like in Mellencamp, Enstar US' agreement with Seaton and Stonewall

to assist the Companies in the administration of the reinsurance agreements provides no grounds

for NICO to assert a claim against non-signatory Enstar US for breach of the reinsurance agreements.

Finally, the Court's opinion in Impulse Marketing, supra, is instructive. In that case, the plaintiff sought to bind a non-signatory, foreign defendant to a forum selection clause of a services contract on grounds that the defendant assumed the contract. 2007 U.S. Dist. LEXIS 42725, at **6-7. The defendant, in turn, moved to dismiss the amended complaint pursuant to Rule 12(b)(2). Id. at *9. In an unpublished opinion, the court denied the motion to dismiss. Id. at *19. In so doing, the court found that the amended complaint's allegations – that the non-signatory (i) "micro-managed" performance under the contract, (ii) acknowledged that it was the "actual party in interest," and (iii) paid for the plaintiff's services – "hue[d] closer to that of a party that was acting under the obligation of a contract than one that is merely assisting in its administration." Id. at *19. Here, unlike in Impulse Marketing, NICO's Complaint does not allege that Enstar US ever (i) asserted that it was the "real party in interest" under the reinsurance agreements, or (ii) paid NICO for any services. See Id., at *18. In fact, likely because NICO currently acts as the Companies' Claims Servicer, NICO's Complaint does not even allege that Enstar US "micro-managed" the Companies' performance under the reinsurance agreements. Id.

Accordingly, for all of the above reasons, NICO's contentions that Enstar US assumed the Companies' obligations under the reinsurance agreements simply cannot be sustained.

**B.    Enstar US Has Not Received An Assignment Of The Companies' Obligations Under The Reinsurance Agreements**

Undoubtedly aware that this Court has previously rejected the assignment argument (see Castlewood, supra), NICO's Complaint does not allege that Seaton and Stonewall assigned their rights and obligations under the reinsurance agreements to Enstar US, nor could it.

Indeed, an assignment is a contractual agreement that transfers to an assignee the assignor/obligee's right to demand performance from the obligor. <u>See</u> Restatement (Second) of Contracts § 317(1) (1981). New York adopted the Restatement standard and deems "[n]o particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned." <u>Leon v. Martinez</u>, 84 N.Y.2d 83, 88, 638 N.E.2d 511, 614 N.Y.S.2d 972 (1994).

Here, the administration agreements did not transfer any rights or obligations under the reinsurance agreements to Enstar US. Even after Enstar US and the Companies entered into the administration agreements, all of Seaton's and Stonewall's rights and obligations under the reinsurance agreements remained solely vested with Seaton and Stonewall. To the extent any contractual disputes arise under the reinsurance agreements after the effective date of the administration agreements, the sole rights of action lie between NICO, on the one hand, and Seaton and Stonewall, on the other hand. Thus, as this Court correctly concluded in the <u>Castlewood</u> decision, <u>supra</u>, the administration agreements do not effect an assignment of Seaton's and Stonewall's obligations under the reinsurance agreements to Enstar US.[3] <u>See</u> <u>Castlewood</u>, <u>supra</u>, 2006 U.S. Dist. LEXIS 77634, at **18-20.

For all of the above reasons, NICO cannot establish that Enstar US assumed or received an assignment of the Companies' obligations under the administration agreements. As such, the Court should dismiss Counts I and III against Enstar US.

---

[3] NICO's Complaint also alleges that NICO is a third-party beneficiary of the administration agreements by virtue of Enstar US' purported "agreement to accept a fiduciary duty to NICO as laid out in the Reinsurance Agreements." (<u>See</u> Complaint ¶¶ 120, 130). As demonstrated above, NICO plainly cannot sustain this assertion. Moreover, even if NICO could demonstrate third-party beneficiary status under the administration agreements, such status would only afford NICO rights as against Enstar US in respect to the administration agreements, which do not impose a fiduciary duty from Enstar US to NICO.

### III.  THE COURT SHOULD DISMISS NICO'S VEIL-PIERCING CLAIMS AGAINST THE GSC AND DUKES PLACE DEFENDANTS FOR FAILURE TO ADEQUATELY PLEAD SUCH A CLAIM

In an effort to extend Seaton's and Stonewall's obligations under Article 18 of the reinsurance agreements to the GSC and Dukes Place Defendants, NICO purports to assert a veil-piercing claim against these defendants in Count I of the Complaint.  (See Complaint, Count I ¶ 118).  In Sahu v. Union Carbide Corp., No. 04 Civ. 8825 (JFK), 2006 U.S. Dist. LEXIS 84475, **9-10 (S.D.N.Y. Nov. 20, 2006), Judge Keenan described the heavy burden faced by a party seeking to pierce the corporate veil:

> Under New York law, veil-piercing is a rare exception to the well-settled American principle of limited liability for individual and corporate shareholders. . . .  Indeed, the avoidance of personal liability for obligations incurred by a business enterprise is one of the fundamental purposes of doing business in the corporate form. . . . Courts start with the presumption of corporate regularity and will only disregard the corporate form when the party seeking to veil pierce makes a substantial showing that the subject corporation is really a dummy or decoy corporation, . . . or where the subject corporation's separate identity [is] so disregarded that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego . . . .  Thus, the party seeking to veil pierce bears a heavy burden.

Id. (internal citations omitted).

Under New York law, a party seeking to pierce the corporate veil must allege "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." EED Holdings, supra, 228 F.R.D. at 512 (quoting Matter of Morris v. N.Y. State Dep't of Taxation and Fin., 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993)); accord Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d 95, 97 (2d Cir. 1997).  The New York Court of Appeals has held that both of these elements must be

established in order to justify application of the veil-piercing doctrine.  See EED Holdings,

supra, 228 F.R.D. at 512 (citing TNS Holdings Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 703

N.E.2d 749, 751, 680 N.Y.S.2d 891 (1998)); see also Morris, supra, 82 N.Y.2d at 141-42

("[D]omination, standing alone, is not enough; some showing of a wrongful or unjust act toward

plaintiff is required").

        Accordingly, for NICO to state a veil-piercing claim against the GSC and Dukes

Place defendants, NICO must allege that such defendants (1) exercised complete domination and

control over Seaton and Stonewall, *and* (2) used their domination and control to commit a *fraud*

*or wrong* that injured NICO.  Here, even under the liberal pleading standard of Rule 8(a) of the

Federal Rules of Civil Procedure,[4] NICO's Complaint fails to plead sufficient facts to meet either

prong of this two-pronged burden.

### A.    The Complaint Fails To Allege Sufficient Facts To Satisfy The "Domination And Control" Prong Of NICO's Veil-Piercing Burden

        Under the first prong of the veil-piercing standard, the Complaint must allege

sufficient facts to support an assertion that the GSC and Dukes Place Defendants exercised such

complete domination and control over Seaton and Stonewall that the Companies became a mere

instrumentality of the defendants.  See Bangkok Crafts Corp. v. Capitolo di San Pietro in

Vaticano, No. 03 Civ. 0015 (RWS) 2006 U.S. Dist. LEXIS 49161, **35-36 (S.D.N.Y. July 7,

2006) (citing Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933 F.2d 131, 138 (2d

Cir. 1991)) ("To pierce the corporate veil, a plaintiff must allege [inter alia] . . . complete

---

[4] Because NICO does not allege fraud in its Complaint, the more liberal pleading standard of Rule 8(a) applies.  See EED Holdings, supra, 228 F.R.D. at 512 ("In this district, veil-piercing claims are generally subject to the pleading requirements imposed by Fed. R. Civ. P. 8(a), which requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'  However, where a veil-piercing claim is based on allegations of fraud, the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined.") (internal citations omitted).

dominance and control of a company such that the company became a mere instrumentality of the individual").

Under New York law, "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard."  In re Currency Conversion Fee Antitrust Litig. ("In re Currency"), 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (citations omitted); accord EED Holdings, supra, 228 F.R.D. at 512. "The unadorned invocation of dominion and control is simply not enough."  In re Currency, supra, 265 F. Supp. 2d at 426.  Indeed, to avoid dismissal, a complaint must allege "specific facts" to support the conclusion that the defendants exercised such domination and control over its subsidiaries.  Id. at 426-27; see also EED Holdings, supra, 228 F.R.D. at 513 ("To avoid dismissal, a party seeking application of the doctrine must come forward with *factual allegations* as to both elements of the veil-piercing claim.") (emphasis added).

In considering whether a plaintiff has pled sufficient fact to demonstrate the requisite "domination and control," New York courts consider a variety of factors, including:

> (1) the absence of corporate formalities, (2) inadequate capitalization, (3) whether corporate funds are used for personal purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, (6) the amount of business discretion of the corporation, (7) whether a parent corporation deals with the subject corporation at arms length, (8) whether parent and subsidiary corporations are treated as independent profit centers, (9) payment of the allegedly dominated corporation's debts by a parent corporation, and (10) whether the corporation had property that was used by the parent as its own.

Sahu, supra, 2006 U.S. Dist. LEXIS 84475, at **12-13 (citing Bridgestone/Firestone, Inc. v. Recovery Credit Card Servs., Inc., 98 F.3d 13 (2d Cir. 1996); Wm. Passalacqua Builders, 933 F.2d at 139).

New York courts examine the above listed factors with the following core requirement in mind: "At the very least, there must be direct intervention by the parent in the management of the subsidiary to such an extent that 'the subsidiary's paraphernalia of incorporation, directors and officers' are completely ignored." Id. at *13 (quoting Billy v. Consol. Mach. Tool Corp., 51 N.Y.2d 152, 163, 412 N.E.2d 934, 432 N.Y.S.2d 879 (1980)). The plaintiff bears the heavy burden to demonstrate such direct intervention on the part of the parent. Id. at *14 (citing Walkovszky v. Carlton, 18 N.Y.2d 414, 223 N.E.2d 6, 276 N.Y.S.2d 585 (1966)).

Because the burden on the party seeking to pierce the corporate veil is so high and the presumption of corporate normalcy well established, see id., this Court has summarily dismissed complaints that lack sufficient facts to support their allegations of veil-piercing. See, e.g., Bangkok Crafts Corp., supra, 2006 U.S. Dist. LEXIS 49161, at **35-39 (dismissing veil-piercing claims on Rule 12(b)(6) motion to dismiss where the complaint made conclusory allegations that (a) the subject companies were a "mere shell, instrumentality, and conduit through which [their president] carried on his business in the corporate name," and (b) the companies' president "exercised control and dominance" over the companies "to such an extent that any individuality or separateness between" the companies and their president "did not exist"); EED Holdings, supra, 228 F.R.D. at 511-13 (dismissing veil-piercing claims on Rule 12(b)(6) motion where the amended complaint's allegations of "domination" and "under-capitalization" were conclusory and therefore failed to satisfy the more lenient Rule 8(a) pleading requirements); In re Currency, supra, 265 F. Supp. 2d at 425-28 (dismissing veil-piercing claims on a Rule 12(b)(6) motion brought by those defendants against whom the

17

complaint conclusory alleged exercised domination and control over their wholly owned subsidiaries).

Illustrative of the high level of domination a party seeking to veil pierce must establish, the Second Circuit, applying New York law, has even rejected veil-piercing claims, as a matter of law, where the record seemed replete with evidence of control.  Sahu, supra, 2006 U.S. Dist. LEXIS 84475, at *15 (citing Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997)).  In American Fuel, the Second Circuit vacated the district court's order compelling a non-signatory corporation to arbitrate on an alter ego theory where the subject corporation had no contacts, *no employees*, no independent space, no bank account, no capital or assets, and the shareholder paid the corporation's expenses from his own pocket without keeping record of the transactions.  Am. Fuel, supra, 122 F.3d at 134-35.  Nonetheless, the court held that the evidence of domination was inadequate as a matter of law because the level of control demonstrated "no more than that [the subject corporation] was a start-up company . . . ."  Id. at 135.  As evidenced above, New York courts apply an exceedingly high standard to claimants seeking to allege veil-piercing claims.

Here, NICO's Complaint does not even come close to approaching the standard necessary to state a claim.  Indeed, in support of the veil-piercing allegations contained therein, NICO's Complaint does nothing more than allege that Seaton and Stonewall (i) had no employees, and (ii) "were at all times dominated and controlled by their owners and parent corporations [the GSC and Dukes Place defendants]."  (Complaint ¶ 118).[5]  These allegations, in

---

[5] In paragraph 17 of the Complaint, NICO also alleges that Seaton's and Stonewall's officers are "employees of Castlewood" (now known as Enstar US) and that Enstar US and the GSC Defendants supply the directors of the Companies.  (See Complaint ¶ 17).  The fact that *Enstar US* supplied officers and directors to the Companies would appear to further contradict NICO's assertions that the *GSC and Dukes Place Defendants* dominated and controlled the Companies.

isolation, do not suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard of Rule 8(a).

First, as to NICO's allegation that the GSC and Dukes Place defendants "dominated and controlled" Seaton and Stonewall, this Court has clearly held that such a conclusory allegation cannot suffice to state a claim.  See, e.g., Bangkok Crafts Corp., supra, 2006 U.S. Dist. LEXIS 49161, at **35-39; EED Holdings, supra, 228 F.R.D. at 511-13.; In re Currency, supra, 265 F. Supp. 2d at 426.  "The unadorned invocation of dominion and control is simply not enough."  In re Currency, supra, 265 F. Supp. 2d at 426.  To meet the pleading threshold, a claimant must allege "specific facts" to support the conclusion that the defendants exercised domination and control over its subsidiaries.  Id. at 426-27.

Second, as to NICO's allegation that Seaton and Stonewall had no employees, this fact in it of itself clearly provides no grounds to pierce the corporate veil.  Indeed, in American Fuel, the Second Circuit rejected a veil-piercing claim where the record established that subject corporation had no employees, in addition to no contacts, no independent space, no bank account and no capital or assets, and where the record demonstrated that the shareholder paid the corporation's expenses from his own pocket without keeping record of the transactions.  Am. Fuel, supra, 122 F.3d at 135.

Moreover, with the exception of possibly alleging overlapping ownership and directors (see Complaint ¶ 17),[6] the Complaint fails to allege any of the ten factors considered by New York courts in reviewing whether a plaintiff has pled sufficient facts to demonstrate the requisite "domination and control."  See Sahu, supra, 2006 U.S. Dist. LEXIS 84475, at **12-13.

---

[6] To be clear, paragraph 17 of the Complaint does not expressly allege that the Companies, on the one hand, and the GSC and Dukes Place Defendants, on the other, share any common directors or shareholders.

For this reason, NICO's Complaint does not meet the "core requirement" of veil-piercing liability, that is, "direct intervention by the parent in the management of the subsidiary to such an extent that 'the subsidiary's paraphernalia of incorporation, directors and officers' are completely ignored." Id. at *13 (quoting Billy, supra, 51 N.Y.2d at 163). That NICO's Complaint fails to meet this core requirement should come as no surprise since Seaton and Stonewall, as insurance companies, operate under a high level of regulation by the Rhode Island Department of Business Regulation.

Accordingly, the Complaint clearly fails to allege sufficient facts to satisfy the "domination and control" prong of NICO's two-pronged veil-piercing burden. For this reason alone, the Court should dismiss Count I against the GSC and Dukes Place Defendants.

**B.    The Complaint Fails To Adequately Plead A "Fraud or Wrong"**

Even if the law did not require NICO to satisfy the domination and control prong of its veil-piercing burden, NICO's Complaint also fails to adequately plead a "fraud or wrong." To satisfy this prong, "the party seeking to veil pierce must establish that the parent corporation misused the corporate form for its own ends to commit a fraud or avoid its obligations." Sahu, supra, 2006 U.S. Dist. LEXIS 84475, at *19 (citing TNS Holdings, supra, 92 N.Y.2d at 339-40). As stated by the New York Court of Appeals in Morris v. New York State Department of Taxation and Finance:

> Domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required. The party seeking to pierce the corporate veil must establish that the owners, through their domination, *abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice* against that party such that a court in equity will intervene.

82 N.Y.2d at 141-42 (emphasis added).

Here, NICO's Complaint does not allege the commission of a fraud. Accordingly, to satisfy the second prong of the veil-piercing burden, the Complaint must allege that the GSC and Dukes Place Defendants, through their domination (i) abused the corporate form of Seaton and Stonewall (ii) to perpetrate a wrong or injustice against NICO. As discussed below, NICO's Complaint wholly fails to meet the minimum pleading standard in this case.

First, NICO's Complaint does not allege that the GSC and Dukes Place defendants "abused" the corporate form of Seaton and Stonewall or otherwise abused the privilege of doing business in the corporate form. (See Complaint ¶¶ 116-122). On its face, therefore, NICO's Complaint is deficient. Moreover, NICO's failure to allege an abuse of the corporate form is not simply a matter of inartful drafting.

Indeed, by law, "[a]n inference of abuse [of the corporate form] does not arise . . . where a corporation was formed for legal purposes or is engaged in legitimate business." Sahu, supra, 2006 U.S. Dist. LEXIS 84475, at *20 (citing TNS Holdings, supra, 92 N.Y.2d at 339-40). For this reason, an inference of abuse cannot arise here. Seaton and Stonewall were both formed for legal purposes long before any of the GSC or Dukes Place defendants came into existence. (See A.M. Best's Insurance Reports for Seaton and Stonewall annexed to Vales Dec. at Exs. 3 & 4 (noting, inter alia, that Seaton was incorporated in 1901 in Washington and that Stonewall was incorporated on February 10, 1866 under the laws of Alabama)).[7] Further, it cannot be disputed that Seaton and Stonewall have engaged in legitimate business at all times relevant to the

---

[7] The Court may properly consider these materials on a Rule 12(b)(6) motion for they are subject to judicial notice under Rule 201 of the Federal Rules of Evidence. See Sun Micro Med. Techs. Corp. v. Passport Health Cmtys., Inc., No. 06 Civ. 2083 (RWS), 2007 U.S. Dist. LEXIS 56686, **7-8 (S.D.N.Y. July 31, 2007) (citing Calcutti v. SBU, Inc., 224 F. Supp. 2d 691, 696 (S.D.N.Y. 2002)) ("When ruling on a motion to dismiss, the Court may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint.").

Complaint.  (See id.)  NICO's veil-piercing claims thus fail to clear the first hurdle of the "fraud or wrong" burden.

Second, while the Court need not reach the issue, NICO's Complaint notably fails to allege a resulting wrong or injustice for which a court in equity must intervene.  See Morris, supra, 82 N.Y.2d at 141-42.  Indeed, although NICO contends that the defendants engaged in a "scheme to deprive NICO of its rights under the Reinsurance Agreements" – specifically its rights to act as Claims Servicer of Seaton and Stonewall (see Complaint ¶¶ 64, 73-75) – the Complaint notably fails to allege that NICO was in fact deprived of any of its rights under the reinsurance agreements.  NICO, of course, cannot sustain such an allegation for it continues to act as Claims Servicer of Seaton and Stonewall to the present day.  (See, e.g., Complaint ¶¶ 112-113 & Judgments annexed to Vales Dec. at Exs. 1 & 2).  Thus, even if the GSC and Dukes Place defendants entered into an scheme to deny NICO of its contractual rights, as NICO has alleged, the scheme has wholly failed to produce a "wrong" or "injustice" to NICO.[8]

Accordingly, for all of these reasons, NICO's Complaint fails to allege facts sufficient to satisfy either prong of NICO's veil-piercing burden.  As such, the Court should dismiss Count I of NICO's Complaint against the GSC and Dukes Place Defendants.

## IV.   THE COURT SHOULD DISMISS ANY CLAIMS AGAINST ENSTAR GROUP LIMITED IN COUNTS I AND III OF THE COMPLAINT DUE TO THE ABSENCE OF ANY IDENTIFIED THEORY OF LIABILITY

NICO's Complaint identifies Enstar Group Limited – the ultimate parent of Enstar US – as a named defendant in Count I and possibly in Count III.  The Complaint, however, fails to identify any theory of liability upon which NICO may state a claim against

---

[8]  Moreover, even if the defendants had succeeded in earning Claims Servicing rights, attempting to gain a competitive edge through lawful means in a brutally competitive industry does not constitute a "fraud or injustice."

Enstar Group Limited for breach of fiduciary duty or breach of contract. In fact, neither of the two theories of liability pled in Count I of the Complaint apply to Enstar Group Limited.

First, unlike its claims against Enstar US, NICO does not allege that Enstar Group Limited assumed a fiduciary duty to NICO by entering into a contractual relationship with Seaton and Stonewall. The Complaint alleges no contractual relationship between Enstar Group Limited and NICO. Second, unlike NICO's claims against the GSC and Dukes Place Defendants, the Complaint does not allege that Enstar Group Limited "dominated and controlled" Seaton and Stonewall, or otherwise attempt to apply a veil-piercing theory against Enstar Group Limited.

In short, NICO's Complaint does not allege any link between NICO and Enstar Group Limited from which NICO could state a claim for breach of fiduciary duty or breach of contract. As such, the Court should dismiss any claims against Enstar Group Limited in Counts I and III of the Complaint.

## V. THE COURT SHOULD DISMISS COUNT V OF THE COMPLAINT AS REDUNDANT OF COUNT IV

In Counts IV and V of the Complaint, NICO alleges claims for, respectively, interference with contract and inducing breach of contract. The Complaint predicates both of these claims on essentially the same allegations. Indeed, the only difference between the allegations of the two counts is that paragraph 143 of Count V consolidates the allegations made in paragraphs 136 and 137 of Count IV.

New York law, however, does not recognize distinct causes of action for interference with contract and inducing breach of contract. See Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94, 612 N.E.2d 289, 595 N.Y.S.2d 931 (1993) (stating that "[t]he tort of inducement of breach of contract, now more broadly known as interference with contractual relations,

consists of four elements");[9] <u>Torcik v. The Chase Manhattan Bank, Inc.</u>, No. 05-5144, 2006 U.S. App. LEXIS 30262, *3 (2d Cir. Dec. 7, 2006) (listing the same four elements for the claim of tortious interference with a contract as identified by the court in <u>Kronos</u>, <u>supra</u>, for the claim of inducing breach of contract); <u>Rupert v. Sellers</u>, 65 A.D.2d 473, 411 N.Y.S.2d 75, 83 (4th Dep't 1978) (referring to a cause of action as the "tortious interference *or* inducing breach of contract claim") (emphasis added).

Where a complaint alleges non-distinct claims based on non-distinct allegations, dismissal of the redundant claim is an appropriate remedy.  <u>See</u>, <u>e.g.</u>, <u>Goldblatt</u>, <u>supra</u>, 2007 U.S. Dist. LEXIS 4278, at **13-15 (granting Rule 12(b)(6) motion to dismiss counterclaim for breach of the implied covenant of good faith and fair dealing as redundant of counterclaim for beach of contract based on the same allegations); <u>Concesionaria DHM, S.A. v. Int'l Fin. Corp.</u>, 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) (granting Rule 12(b)(6) motion to dismiss claims for breach of the implied covenant of good faith and fair dealing as duplicative of non-distinct claims for breach of contract); <u>Spanierman Gallery, PSP v. Love</u>, No. 03 Civ. 3188 (VM), 2003 U.S. Dist. LEXIS 19511, **10-13 (S.D.N.Y. Oct. 31, 2003) (dismissing claims for conversion, replevin, fraud, unjust enrichment and constructive trust as duplicative of claims for breach of contract where the former claims did not allege distinct harm or distinct duties giving rise to separate claims).

Accordingly, because NICO's Complaint alleges non-distinct claims in Counts IV and V based on non-distinct allegations, the Court should dismiss Count V of the Complaint as

---

[9] These four elements for the tort of inducement of breach of contract consist of: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." <u>Kronos</u>, <u>supra</u>, 81 N.Y.2d at 94.

redundant of Count IV.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Counts I, III and V of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Dated: July 23, 2008

Respectfully submitted,

By:_____s/ John R. Vales_____
       John R. Vales (jvales@riker.com)

RIKER DANZIG SCHERER HYLAND &
   PERRETTI LLP
500 Fifth Avenue, 49th Floor
New York, New York 10110
(212) 302-6574

-- and --

HARGRAVES MCCONNELL & COSTIGAN, P.C.
The Graybar Building
420 Lexington Avenue
New York, New York 10170
(212) 218-8760

Attorneys for Defendants Greenwich Street Investments II, L.L.C., Greenwich Street Capital Partners II, L.P., DP Holdings L.L.C., Dukes Place Holdings L.L.C., Dukes Place Holdings Ltd., Dukes Place Holdings, L.P., Enstar Group Ltd. and Enstar (US) Inc.

3871242.4

25