UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

NATIONAL INDEMNITY COMPANY,

                         Plaintiff,

      vs.

GREENWICH STREET INVESTMENTS II,
L.L.C., GREENWICH STREET CAPITAL
PARTNERS II, L.P., DP HOLDINGS L.L.C.,
DUKES PLACE HOLDINGS L.L.C., DUKES
PLACE HOLDINGS LTD.,
DUKES PLACE HOLDINGS, L.P.,
ENSTAR GROUP LIMITED,
AND ENSTAR (US), INC.,

                     Defendants.

                                  08-CV-4067 (RWS)
                                  ECF Case

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## NATIONAL INDEMNITY COMPANY'S MEMORANDUM
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## COUNTS I, III AND V OF THE COMPLAINT PURSUANT TO RULE 12(b)(6)

DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, New York  10019
(212) 259-8000

- and -

CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue, 11th Floor
New York, New York  10174
(212) 710-3900

Attorneys for Plaintiff
National Indemnity Company

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

   I.   THE RELEVANT AGREEMENTS ......................................................................... 2

   II.   THE WRONGFUL ACTS OF DEFENDANTS LEADING TO THIS COMPLAINT ........................................................................................................... 6

ARGUMENT ........................................................................................................................ 8

   I.   RULE 12(B) (6) STANDARD ................................................................................. 8

   II.   NICO CAN ESTABLISH BOTH THAT THAT NICO IS AN INTENDED THIRD-PARTY BENEFICIARY OF THE CASTLEWOOD ADMINISTRATION AGREEMENTS, AND THAT CASTLEWOOD/ENSTAR US HAS ASSUMED OBLIGATIONS UNDER THE REINSURANCE AGREEMENTS ...................................................................................................... 9

      a.  NICO is a Third-Party Beneficiary of the Castlewood Administration Agreements .......................................................................................................... 9

      b.  Castlewood/Enstar US Has Assumed Seaton's and Stonewall's Obligations Under the Reinsurance Agreements .............................................................. 11

   III.   DEFENDANTS GSC PARTNERS, GREENWICH FUND AND DUKES PLACE ARE LIABLE TO NICO FOR BREACH OF FIDUCIARY DUTY UNDER A THEORY OF PARENT-SUBSIDIARY LIABILITY ........................................... 15

      a.  NICO Has Adequately Alleged Domination and Control ................................ 16

      b.  The Complaint Adequately Alleges that Defendants' Domination and Control Resulted in a Wrong Perpetuated Upon NICO ............................................... 20

CONCLUSION ................................................................................................................... 22

# TABLE OF AUTHORITIES

**CASES**
**Page(s)**

*American Fuel Corp. v. Utah Energy Dev. Co*, 122 F.3d 130
(2d Cir. 1997)..................................................................................19, 20

*Apex Oil Co. v. Vanguard Oil & Serv. Co.*, 760 F.2d 417 (2d Cir. 1985).......................12

*Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, No. 03 Civ.
0015, 2006 U.S. Dist. LEXIS 49161 (S.D.N.Y. Jul. 18, 2006) ..................................18

*Billy v. Consol. Mach. Tool Corp.*, 21 N.Y.2d 152, 432 N.Y.S.2d 879
(1980)...........................................................................................................18

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 18
(2d Cir. 1996).................................................................................................17

*Burkina Wear, Inc. v. Campagnolo, S.R.L.*, No. 07-cv-3610, 2008 U.S.
Dist. LEXIS 29031 (S.D.N.Y. Apr. 9, 2008)....................................................8

*Cal Distrib. Inc. v. Cadbury Schweppes Ams. Beverages, Inc.*, No. 06 Civ.
0496, 2007 U.S. Dist. LEXIS 854 (S.D.N.Y. Jan. 5, 2007).........................................12

*Cary Oil Co. v. MG Refining & Mktg., Inc.*,
230 F. Supp. 2d 439 (S.D.N.Y. 2002)..........................................................................22

*Castlewood (US), Inc. v. Nat'l Indemnity Co.*, No. 06 Civ. 6842 (KMK),
2006 U.S. Dist. LEXIS 77634 (S.D.N.Y. Oct. 24, 2006) ................................14

*Citicorp Int'l Trading Co. v. Western Oil & Refining Co.*, 771 F. Supp.
600 (S.D.N.Y. 1991)..................................................................................17, 19, 20

*Conan Props., Inc. v. Mattel, Inc.*, 619 F. Supp. 1170 (S.D.N.Y. 1985)....................17, 18

*Conley v. Gibson*, 355 U.S. 41 (1957) ..........................................................................8

*Consolidated Edison, Inc. v. Ne. Utils.*, 426 F.3d 524 (2d Cir. 2005)..............................10

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508
(S.D.N.Y. 2005)...............................................................................................19

*Europacific Asset Mgmt. Corp. v. Tradescape Corp.*, No. 03 Civ. 4556
(PKL), 2005 U.S. Dist. LEXIS 3227 (S.D.N.Y. Mar. 2, 2005)....................................9

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38
(1985) ..................................................................................................10

*Goldblatt v. Englander Commc'ns, L.L.C.*, No. 06 Civ. 3208 (RWS), 2007
U.S. Dist. LEXIS 4278 (S.D.N.Y. Jan. 22, 2007) ..................................16, 21

*Granite Partners v. Bear Stearns & Co.*, 58 F. Supp. 2d 228
(S.D.N.Y. 1999) ................................................................................9, 10

*Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376
(D. Del. 2000) ....................................................................................20

*Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 914 F. Supp.
964 (S.D.N.Y. 1995), *clarified on other grounds*, 914 F. Supp. 997
(S.D.N.Y. 1997) ..................................................................................10

*Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208
(S.D.N.Y. 2002) ..................................................................................10

*Impulse Marketing Group, Inc. v. Nat'l Small Bus. Alliance, Inc.*, No. 05-
cv-7776 (KMK), 2007 U.S. Dist. LEXIS 42725 (S.D.N.Y. Jun. 12,
2007) ..................................................................................................12

*Interested Lloyd's Underwriters v. Ross*, No. 04 Civ. 4381 (RWS), 2005
U.S. Dist. LEXIS 25471 (S.D.N.Y. Oct. 31, 2005) ..............................16, 20

*In re LJM2 Co-Investment, L.P. Ltd. Partners Litig.*, 866 A.2d 762 (Del.
Ch. 2004).............................................................................................20

*Lowendahl v. Baltimore & O.R. Co.*, 247 A.D. 144 (1st Dep't 1936), *aff'd*,
277 N.Y. 360 (1936) ............................................................................18

*Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154 (S.D.N.Y. 1988)..............13

*Nat'l Cas. Co. v. Vigilant Ins. Co.*, 446 F. Supp. 2d 533 (S.D.N.Y. 2006)........9

*Passalacqua Builders v. Resnick Developers S.*, 933 F.2d 131 (2d Cir.
1991) ..................................................................................................16

*Petersen v. Vallenzano*, No. 89 Civ. 5346, 1992 U.S. Dist. LEXIS 6922
(S.D.N.Y. May 22, 1992)..................................................................16, 17

*Sazerac Co. v. Falk*, 861 F. Supp. 253 (S.D.N.Y. 1994) ................................10

*Stahlex -Interhandel Trustee v. Western Union Financial Servs.*, No. 99
Civ. 2246, 2002 U.S. Dist. LEXIS 19854 (S.D.N.Y. Oct. 22, 2002) ...................16, 17

*United States v. Nagelberg*, 772 F. Supp. 120 (E.D.N.Y. 1991) .......................17

*Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 141 F. Supp. 2d 412 ...........................16, 17

## STATUTES

6 Del. Code Ann. tit. § 17-403 (b) ...................................................................20

## OTHER AUTHORITIES

Restatement (Second) of Contracts § 302(1) ..................................................10

## PRELIMINARY STATEMENT

Plaintiff National Indemnity Company ("NICO") respectfully submits this memorandum of law in opposition to Defendants' Motion to Dismiss Counts I, III and V of the Complaint Pursuant to Rule 12(b)(6) (the "Motion to Dismiss").

Defendants have only moved to dismiss certain counts of NICO's Complaint (the "Complaint"). They do not challenge the adequacy of the pleadings relating to Counts II and IV. Further, Defendants do not challenge the adequacy of allegations of the substantive facts against them. Rather, their challenges are procedural in nature. Defendants GSC Partners, Greenwich Fund and Dukes Place claim that NICO has not pled adequate facts to hold them accountable for the contractual breaches of Seaton Insurance Company ("Seaton") and Stonewall Insurance Company ("Stonewall"), the shell companies that the Defendants control, as alleged in Counts I and III of the Complaint. Defendant Castlewood/Enstar US[1] claims that NICO does not have standing to sue it for the contractual breaches of Seaton and Stonewall alleged in Counts I and III. As shown below, these challenges are without merit. The Complaint adequately pleads veil-piercing claims against Defendants GSC Partners, Greenwich Fund and Dukes Place. Further, the Complaint adequately pleads that NICO is a third-party beneficiary of agreements between Seaton and Stonewall and Castlewood/Enstar US and that Castlewood/Enstar US assumed the obligations of Seaton and Stonewall, the shell companies, to NICO.

---

[1] Castlewood changed its name to Enstar (US) Inc. The relevant agreements refer to the contracting party as Castlewood. In the Motion to Dismiss, Defendants refer to Castlewood as Enstar US. To avoid confusion, these opposition papers will use the term Castlewood/Enstar US.

Defendant Enstar Ltd., the parent company of Castlewood/Enstar US, also seeks to dismiss Counts I and III of the Complaint, but NICO is not making any claim against Enstar Ltd. under those counts. NICO is making claims against Defendants Castlewood/Enstar US and Enstar Ltd. in Counts II and IV, which are not the subject of the Motion to Dismiss by any Defendants. All Defendants have moved to dismiss Count V as redundant to Count IV. Since there is no challenge to the adequacy of Count IV of the Complaint and because of the similarity of the causes of action, NICO agrees that Count V can be subsumed within Count IV and dismissed as a separate Count.

## STATEMENT OF FACTS

As Defendants have moved to dismiss only certain counts of NICO's lawsuit against them, NICO does not intend to repeat every allegation in its Complaint, but rather focuses on those facts that are relevant to the Defendants' Motion.

## I.    THE RELEVANT AGREEMENTS

NICO entered into two separate Reinsurance Agreements (the "Seaton Reinsurance Agreement" and "Stonewall Reinsurance Agreement") with Seaton and Stonewall. Seaton and Stonewall (collectively, the "Companies") are owned by Defendant Dukes Place Holdings, L.P., through a holding company, Stonewall Acquisition Corporation,[2] and are shell companies that are dominated and controlled by

---

[2] Castlewood/Enstar US, through an affiliate, Virginia Holdings Ltd., has recently consummated a purchase of 44.4% of the stock of Stonewall Acquisition Corporation, the holding company that owns the stock of Seaton and Stonewall. Dukes Place continues to be the majority shareholder of Stonewall Acquisition Corporation.

their ultimate parents, GSC Partners and Greenwich Fund (collectively, the "GSC Entities"). (¶¶ 5, 10- 14, 17).[3]

Under the agreements (collectively, the "Reinsurance Agreements") with Stonewall and Seaton, NICO would assist in the administration of the Companies' claims and provide them with reinsurance coverage. (¶¶ 24, 31, 32, 36). The Seaton Reinsurance Agreement imposes a fiduciary duty on Seaton to act in the best interests of NICO:

> In undertaking the obligations and responsibilities
> described herein, [Seaton] and Claims Servicer will have a
> fiduciary duty to act in utmost good faith to the interests of
> [NICO].

(¶¶ 27, 28; Ex. A[4] at Art. 18). The identical language of the Stonewall Reinsurance Agreement imposes a fiduciary duty on Stonewall to act in the best interests of NICO. (¶ 35; Ex. B at Art. 18).

Since neither Seaton nor Stonewall were to have any employees, the GSC Entities arranged for the Companies to enter into agreements with Eastgate Group Limited[5] (the "Seaton Administration Agreement" and "Stonewall Administration Agreement") for the administration of the Reinsurance Agreements. (¶ 39). The Seaton Administration Agreement named Eastgate the "Claims Servicer" but acknowledged NICO's role in claims handling:

> Eastgate will provide a representative of NIC with full time
> access to the Company's offices and records and to allow
> such representative to monitor the payment of claims and to
> assist Eastgate and the Company in the settlement of such

---

[3] NICO's references to "¶" are to the allegations pled in NICO's Complaint.

[4] NICO's references to "Ex." are the Exhibits to NICO's Complaint.

[5] Eastgate was later renamed Cavell USA, Inc.

> claims. In addition, Eastgate will pay NIC for all salary,
> benefits and like costs and expenses associated with such
> representative, but not more than $100,000 per annum.

(¶ 40). The Stonewall Administration Agreement also named Eastgate "Claims Servicer" for Stonewall's claims. (¶ 41).

After an unsuccessful bid to the Rhode Island Insurance Department to allow Seaton and Stonewall to pay a dividend to Dukes Place, the GSC Entities sought to recoup their investment in Seaton and Stonewall by shopping for a buyer for the Companies. (¶ 49). Castlewood/Enstar US was identified as a potential purchaser. (¶ 50).

But the GSC Entities had a problem. Under the terms of the Reinsurance Agreements, should Dukes Place cease to have a controlling interest in either company, NICO would assume control over adjusting that company's liabilities as claims servicer. (¶¶ 42, 43). In the eyes of Defendants GSC Partners and Greenwich Fund, as well as Castlewood/Enstar US, this rendered the Companies "unsaleable." (¶ 55). Accordingly, as Castlewood/Enstar US's intention in purchasing the insurance companies was to become claims servicer and earn claims servicing fees, the GSC Entities and Castlewood/Enstar US devised a plan to deprive NICO of its contractual rights under the Reinsurance Agreements with Seaton and Stonewall. (¶¶ 52, 53, 55). The GSC Entities and Castlewood/Enstar US entered into a scheme to "build a case" against NICO. (¶¶ 56, 57, 58, 59, 61, 67).

In January 2006, Seaton and Stonewall each entered into Agreements Relating to Administration of Run-Off Business with Castlewood (the "Seaton Castlewood Administration Agreement" and "Stonewall Castlewood Administration Agreement" or, collectively, the "Castlewood Administration Agreements"). (¶ 69; Exs. C-D). Under

both agreements, Castlewood/Enstar US agreed to administer the Reinsurance

Agreements consistent with the Companies' rights and obligations under the Reinsurance

Agreements. For instance, the Stonewall Castlewood Administration Agreement

provided:

> Castlewood warrants that it has read the Reinsurance
> Agreement in its entirety, that the Reinsurance Agreement
> creates various rights and obligations with respect to the
> Run-Off Business between [Stonewall], on the one hand,
> and NIC, on the other. Castlewood agrees to administer the
> Reinsurance Agreement consistent with [Stonewall's]
> rights and obligations under the Reinsurance Agreement.

(¶¶ 70, 71; Ex. C, at Section 2.2).

In June 2006, Virginia Holdings Corporation (a newly formed Castlewood/Enstar

US affiliate) entered into a Stock Purchase Agreement with Dukes Place (the

"Castlewood SPA") which bound Castlewood/Enstar US to either convince or force

NICO to relinquish its contractual rights:

> The parties shall each use commercially reasonable efforts
> to cause Castlewood US to obtain, as expeditiously as
> possible, (i) [NICO's] consent to Castlewood US, or an
> Affiliate of Castlewood US, serving as the Claims Servicer
> (as such term is defined in the Stonewall Reinsurance
> Agreement) and (ii) [NICO's] waiver of its right to become
> the Claims Servicer (such consent and waiver, collectively,
> the "Reinsurer Consent"), with such Reinsurer Consent to
> be in a form mutually acceptable to Seller and Purchaser.
> For purposes of the covenants contained in Section 5.10,
> time is of the essence.

(¶ 73). If NICO were to give up its contractual rights, then Castlewood/Enstar US would

purchase 100% of Seaton and Stonewall. (¶ 75). Furthermore, the parties to the

Castlewood SPA agreed that, should Seaton and Stonewall prevail in obtaining a money

award from NICO, the funds would be shared between Castlewood/Enstar US and the

GSC Entities, rather than being retained by Seaton or Stonewall. (¶ 79).

## II.    THE WRONGFUL ACTS OF DEFENDANTS LEADING TO THIS COMPLAINT

Following their agreement to "build a case against NICO" in order to force NICO to relinquish its contractual rights under the Reinsurance Agreements, the GSC Entities allowed Castlewood/Enstar US to use the policyholder surplus of Seaton and Stonewall to make meritless allegations against NICO, pursue meritless claims against NICO, and interfere with NICO's exercise of its rights under the Reinsurance Agreements. (¶¶ 61, 64, 67, 76, 115). The actions taken by the GSC Entities and Castlewood/Enstar US to cause Seaton and Stonewall to breach their fiduciary duties to NICO and interfere with NICO's rights under the Reinsurance Agreements include the following:

1.    Making false representations to the Rhode Island Department of Insurance ("DOI"). In the spring and summer of 2006, representatives of the GSC Entities and Castlewood/Enstar US falsely represented to the DOI that NICO had interfered with Seaton's and Stonewall's claims and was acting in its own self-interest. (¶ 89). These misrepresentations were made to lend ballast to anonymous emails received by the Department regarding NICO's alleged improper claims handling – claims that the GSC Entities and Castlewood/Enstar US maintained were valid even though they had concluded internally that they were almost entirely false. (¶¶ 90, 91).

2.    Forcing NICO to commence arbitrations in 2006 to obtain access to records to which it was entitled under the Reinsurance Agreements.

3.    Causing Seaton and Stonewall to interpose meritless counterclaims in the arbitrations for rescission of the Reinsurance Agreements and to obtain the right to service claims and collect third-party reinsurance in contravention of NICO's rights under

these agreements.  In the fall of 2006, prior to the commencement of the arbitration hearings, Dominic Sylvester, an Enstar Ltd. executive, met with representatives of NICO. (¶¶ 95, 96).  At this meeting, the purpose of which was purportedly to discuss a potential sale of the Companies to NICO or, alternatively, a commutation of the Reinsurance Agreements, Mr. Sylvester informed the NICO representatives that Castlewood/Enstar US would pursue claims against NICO that could affect its AAA rated status and that, while he "did not wish to use the word blackmail," he imagined that NICO would be willing to buy the Companies from Enstar at a premium, in order to avoid having to defend itself against such accusations. (¶ 97).

  4.  Rehiring a previously-terminated employee that Castlewood/Enstar US admitted was of "limited scope and professional skills" (¶ 106) so that he could testify against NICO.  As the arbitration hearings approached, Castlewood/Enstar US hired Robert Burns, a former employee of Eastgate (the prior administrator of Seaton and Stonewall), to testify adversely against NICO in exchange for a job.  (¶¶ 98, 99, 100, 101, 102).  Though he had been terminated by Eastgate in November 2005, Mr. Burns agreed to employment with Castlewood/Enstar US and to testify against NICO at the arbitration hearings.  Mr. Burns' criticisms of NICO's claims practices, however, have been acknowledged to be baseless by Castlewood/Enstar US.  (¶¶ 105, 106).

  After the hearings concluded, the arbitration panels issued rulings in favor of NICO, denying all claims made by Seaton and Stonewall and affirming NICO's rights under the Reinsurance Agreements.  (¶ 113).[6]  These rulings were confirmed by this

---

[6] And, upon information and belief, almost immediately after the rulings were issued, Mr. Burns was terminated by Castlewood.  (¶ 110).

Court as judgments in November 2007 (07-cv-10363 and 07-cv-10349). (¶ 113). Yet, the Defendants have continued to cause Seaton and Stonewall to breach the Reinsurance Agreements and to interfere with NICO's rights under the Reinsurance Agreements.

After the awards were confirmed, a representative of Defendants and Seaton and Stonewall communicated to NICO that because the awards confirmed NICO's rights under the Reinsurance Agreements, the GSC Entities and Castlewood/Enstar US needed to find a "silver bullet" to convince NICO to buy Seaton and Stonewall at a premium. (¶ 114). Following this threat, Defendants caused Seaton and Stonewall to serve NICO with two new arbitration demands in March 2008, once again seeking rescission of the Reinsurance Agreements from NICO seemingly based on the very allegations that were rejected by the panels in the original arbitrations. (¶ 115).[7]

## ARGUMENT

### I.    RULE 12(B) (6) STANDARD

As Defendants have rightfully acknowledged in their Motion to Dismiss, the standard for review of a motion to dismiss under Rule 12(b) (6) of the Federal Rules of Civil Procedure is very high, as "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'" *Burkina Wear, Inc. v. Campagnolo, S.R.L.*, No. 07-cv-3610, 2008 U.S. Dist. LEXIS 29031, at *5 (S.D.N.Y. Apr. 9, 2008) (Sweet, J.) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (alterations original). For the purposes of the Motion to Dismiss, all of the allegations in

---

[7] These new arbitrations are the subject of a separate action before this Court, *National Indemnity Company v. Seaton Insurance Company and Stonewall Insurance Company*, 08 Civ 3718 (RWS).

NICO's Complaint should be accepted as true. *Id.* The Court may grant the Motion to Dismiss only if, "'after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Nat'l Cas. Co. v. Vigilant Ins. Co.*, 466 F. Supp. 2d 533, 537 (S.D.N.Y. 2006) (citations omitted). All factual inferences must be drawn in plaintiff's favor. *Granite Partners L.P. v. Bear Stearns & Co.*, 58 F. Supp. 2d 228, 234 (S.D.N.Y. 1999) (Sweet, J). Defendants cannot meet this heavy burden.

## II.    NICO CAN ESTABLISH BOTH THAT THAT NICO IS AN INTENDED THIRD-PARTY BENEFICIARY OF THE CASTLEWOOD ADMINISTRATION AGREEMENTS, AND THAT CASTLEWOOD/ENSTAR US HAS ASSUMED OBLIGATIONS UNDER THE REINSURANCE AGREEMENTS

### a.    *NICO is a Third-Party Beneficiary of the Castlewood Administration Agreements*

NICO alleged that it is a third-party beneficiary of the Castlewood Administration Agreements. (¶¶ 69-72). Under New York law, a non-signatory to a contract is considered a third-party beneficiary if either (a) no other party can recover under the contract in the event of breach, or (b) on its face, the contract shows an intent to benefit a third party and grant that party enforcement rights. *Europacific Asset Mgmt. Corp. v. Tradescape Corp.*, No. 03 Civ. 4556 (PKL), 2005 U.S. Dist. LEXIS 3227, at *21-22 (S.D.N.Y. Mar. 2, 2005). As this Court has observed, "[t]he general test for third-party beneficiary status, as adopted by New York from the Restatement (Second) of Contracts, is as follows:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the

circumstances indicate that the promisee intends to give the
beneficiary the benefits of the promised performance.

*Granite Partners*, 58 F. Supp. 2d at 247-248; *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257

(S.D.N.Y. 1994) (Sweet, J.). *See also Consolidated Edison, Inc. v. Ne. Utils.*, 426 F.3d

524, 527 (2d Cir. 2005); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66

N.Y.2d 38, 44 (1985) (adopting the view articulated in the Restatement (Second) of

Contracts § 302(1)).

The contract must demonstrate an intention by the parties to provide the third

party with a sufficiently immediate benefit to justify recognition of a cause of action.

*Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208, 217-218 (S.D.N.Y. 2002).

However, the obligation to perform to the third-party beneficiary need not be expressly

stated in the contract, and courts may look at the surrounding circumstances as well as the

agreement when determining whether a third-party beneficiary exists. *Granite Partners*,

58 F. Supp. 2d at 248; *Houbigant, Inc. v. ACB Mercantile* (*In re Houbigant, Inc.*),

914 F. Supp. 964, 985 (S.D.N.Y. 1995), *clarified on other grounds*, 914 F. Supp. 997

(S.D.N.Y. 1996). Finally, the intention of the promisee, and not the promisor, determines

whether the beneficiary is entitled to the benefits of the contract. *Sazerac Co.*, 861 F.

Supp at 258.

Here, NICO is an intended beneficiary of the Castlewood Administration

Agreements. Under the terms of the agreements, Castlewood/Enstar US promised to

administer the responsibilities of the Reinsurance Agreements "consistent with [the

Companies'] rights and obligations under the [NICO] Reinsurance Agreements." (Exs.

C-D at Section 2.2). This provision gives Seaton and Stonewall the assurance that

Castlewood/Enstar US will not cause Seaton and Stonewall to breach the Reinsurance

10

Agreements, thereby ensuring that NICO's rights under the Reinsurance Agreements —
including the fiduciary duties owed to NICO by Seaton and Stonewall — will not be
compromised. (¶¶ 69-72). In accordance with the Restatement's standards, these
provisions evidence a manifest intention by Seaton and Stonewall to give NICO the
benefit of Castlewood/Enstar US's promised performance of its obligations under the
Castlewood Administration Agreement. Castlewood/Enstar US promised to perform its
obligations in accordance with the obligations of Seaton and Stonewall to NICO in the
Reinsurance Agreements.

Indeed, Seaton and Stonewall could only perform their obligations to NICO under
the Reinsurance Agreements through Castlewood/Enstar US because Seaton and
Stonewall had no employees to fulfill those obligations. (¶ 17). All of the obligations to
NICO under the Reinsurance Agreements could only be performed by Castlewood/Enstar
US employees. Further, all of the officers of Seaton and Stonewall were
Castlewood/Enstar US employees. (¶ 17).

As the intended beneficiary of those Castlewood Administration Agreements,
NICO can enforce the obligations set forth in those contracts — including the obligation
to act in NICO's best interests in accordance with the fiduciary duty owed to NICO by
Seaton and Stonewall under the Reinsurance Agreements.

### b.    *Castlewood/Enstar US Has Assumed Seaton's and Stonewall's Obligations Under the Reinsurance Agreements*

The Castlewood Administration Agreements also demonstrate that
Castlewood/Enstar US has assumed Seaton's and Stonewall's obligations under the
Reinsurance Agreements. Even if a party has not signed a contract, it may be liable

under that contract if it either has assumed or has been assigned[8] the obligations of the

contract. *Impulse Marketing Group, Inc. v. Nat'l Small Bus. Alliance, Inc.*, No. 05-cv-

7776 (KMK), 2007 U.S. Dist. LEXIS 42725, at *15-16 (S.D.N.Y. Jun. 12, 2007); *Cal

Distrib. Inc. v. Cadbury Schweppes Ams. Beverages, Inc.*, No. 06 Civ. 0496, 2007 U.S.

Dist. LEXIS 854, at *12 (S.D.N.Y. Jan. 5, 2007). A 'written contract need not be signed

to be binding against a party, so long as the party indicates through performance of its

terms or other unequivocal acts that it intends to adopt the contract." *Impulse Marketing*,

2007 U.S. Dist. LEXIS 42725, at *16.

   As acknowledged in the Motion to Dismiss, the Court in *Impulse Marketing*

denied the defendants' motion to dismiss because the complaint alleged that the conduct

of the non-signatory "hue[d] closer to that of a party that was acting under the obligation

of a contract than one that is merely assisting in its administration." 2007 U.S. Dist.

LEXIS 42725, at *19; (Defendants' Memo at p. 12).[9] Defendants' efforts to distinguish

the allegations of the present Complaint from the complaint in *Impulse Marketing* are

unavailing. In *Impulse Marketing*, the Court concluded that the assumption of

contractual obligations by a non-party "may be established through conduct of the parties

recognizing the contract." 2007 U.S. Dist. LEXIS 42725, at *19 (*quoting Apex Oil Co. v.

Vanguard Oil & Serv. Co.*, 760 F.2d 417, 422 (2d Cir. 1985)). NICO, however, is not

required to plead the exact same facts as existed in *Impulse Marketing*.

---

[8] NICO has made no claim that the Reinsurance Agreements were assigned by Seaton or Stonewall to Castlewood/Enstar US. Accordingly, the discussion at Part II(B) of Defendants' brief regarding assignment is irrelevant to the determination of the Motion to Dismiss.

[9] NICO's references to "Defendants' Memo" are to Defendants' Memorandum of Law in Support of their Motion to Dismiss.

As in *Impulse Marketing*, NICO has alleged a pattern of behavior on the part of Castlewood/Enstar US that shows that in administering the Reinsurance Agreements, Castlewood/Enstar US has assumed obligations under the contracts.  First, as in *Impulse Marketing*, Castlewood/Enstar US *has* micromanaged the Companies' performance under the contract.  Castlewood/Enstar US has dominated nearly every aspect of the Companies' performance under the Reinsurance Agreements.  As stated above, Seaton and Stonewall had no employees to perform their obligations under the Reinsurance Agreements.  (¶ 17).  Castlewood/Enstar US employees performed those obligations on behalf of Seaton and Stonewall.  Under these circumstances and the express terms of the Castlewood Administration Agreements, NICO has pled sufficient facts to state a claim that Castlewood/Enstar US has assumed the obligations of Seaton and Stonewall under the Reinsurance Agreements.

Defendants also point to *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1160 (S.D.N.Y. 1988), in which the Court stated that it "is unaware of any authority . . . to support plaintiff's assertion that these two defendants may be liable for the breach of a contract which they are strangers to simply because they share the same director and/or owner as the other corporate defendants or because they assisted the other corporate defendants in [the administration of a publishing agreement]." *Id.*  Castlewood/Enstar US, however, is no stranger to the Reinsurance Agreements.  It has been intimately involved (rather than offering mere assistance) in the administration of the Reinsurance Agreements and has obligated itself to act in conformity with Seaton's and Stonewall's obligations under those agreements.  (¶¶ 69-80).

13

Finally, Defendants make much of Judge Karas' decision in *Castlewood (US),*
*Inc. v. Nat'l Indemnity Co.*, No. 06 Civ. 6842 (KMK), 2006 U.S. Dist. LEXIS 77634
(S.D.N.Y. Oct. 24, 2006), in which the Court declined to compel Castlewood/Enstar US
to participate in the Seaton and Stonewall arbitrations. (Defendants' Memo at pp. 10-11).
First, and most simply, the *Castlewood* case does not deal with whether a non-signatory
to a contract can be a party to a breach of contract action. Rather, it deals with the rather
narrow circumstance where a party seeks to bind a non-signatory to an *arbitration*
*agreement.*

Defendants' reliance upon Judge Karas' opinion does a great disservice to the
opinion. Defendants quote just five sentences of a fourteen sentence passage, relegating
the bulk of the passage to ellipses. (Defendants' Memo at p. 11). The omitted text makes
it clear that Judge Karas' discussion in the misleading quote pertained to NICO's
*assignment* argument, rather than its *assumption* argument. In fact, as the omitted text
makes clear, the cases that Judge Karas concludes are "inapposite" are assignment cases,
not assumption cases. *Castlewood*, 2006 U.S. Dist. LEXIS 77634 at *18-20. NICO has
not alleged here that Seaton's and Stonewall's rights were assigned to Castlewood/Enstar
US.

Furthermore, in *Castlewood*, Judge Karas rejected NICO's argument on the
grounds that "NICO ultimately makes no allegation that Castlewood has ever manifested
any intent to arbitrate any issue arising from the Reinsurance Agreement . . . Absent such
a showing, the assumption exception cannot apply." *Castlewood*, 2006 U.S. Dist. LEXIS
77634, at *17-18. Under the Castlewood Administration Agreements, however,
Castlewood/Enstar US did in fact evidence an intention to be bound by the obligations of

Seaton and Stonewall under the Reinsurance Agreements. Specifically, Castlewood/Enstar US agreed to "cause the services to be performed [by Castlewood/Enstar US] in a manner consistent with [Seaton's] rights and obligations under the Reinsurance Agreements. . ." (¶¶ 69, 71; Ex. D at Section 2.2) and to "administer the Reinsurance Agreement consistent with [Stonewall's] rights and obligations under the Reinsurance Agreement. . ." (¶¶ 69, 70; Ex. C at Section 2.2). To promise to "cause the services to be performed" in a manner that respects NICO's rights and the Companies' obligations manifests an intention to be bound to the provisions of the Reinsurance Agreement containing those obligations. While Castlewood/Enstar US may not have assumed the duty *to arbitrate* under those Castlewood Administration Agreements, it most certainly has assumed other obligations in its performance of services under the Castlewood Administration Agreements.

## III.   DEFENDANTS GSC PARTNERS, GREENWICH FUND AND DUKES PLACE ARE LIABLE TO NICO FOR BREACH OF FIDUCIARY DUTY UNDER A THEORY OF PARENT-SUBSIDIARY LIABILITY

GSC Partners, Greenwich Fund and Dukes Place move to dismiss Count I of the Complaint on the grounds that the Complaint does not adequately plead a veil-piercing claim. (Defendants' Memo. at pp.15-22). The Complaint, however, more than adequately pleads domination and control by these Defendants and the use of this domination and control to perpetrate a wrong upon NICO — causing Seaton and Stonewall, the shell companies they control, to breach the Reinsurance Agreements with NICO and pursue meritless claims against NICO.

This Court has articulated the requirements for piercing the corporate veil. "[A] party seeking to pierce a corporate veil must make a two-part showing: (i) that the owner exercised complete domination over the corporation *with respect to the transaction at*

15

*issue*; and (ii) that such domination was used to commit a fraud *or wrong* that injured the party seeking to pierce the veil." *Goldblatt v. Englander Commc'ns, L.L.C.*, No. 06 Civ. 3208 (RWS), 2007 U.S. Dist. LEXIS 4278, at *16 (S.D.N.Y. Jan. 22, 2007) (Sweet, J.) (emphasis added); *Stahlex –Interhandel Trustee v. Western Union Financial Servs.*, No. 99 Civ. 2246, 2002 U.S. Dist. LEXIS 19854, at *17-18 (S.D.N.Y. Oct. 22, 2002) (Sweet, J.). It is not necessary to allege fraud. *Goldblatt*, 2007 U.S. Dist. LEXIS 4278, at *16. Further, whether a subsidiary is an alter ego of its corporate parent is a fact-intensive inquiry which is generally submitted to a jury. *Stahlex-Interhandel*, 2002 U.S. Dist. LEXIS 19854, at *14, 16; *See also Interested Lloyd's Underwriters v. Ross*, No. 04 Civ. 4381 (RWS), 2005 U.S. Dist. LEXIS 25471 (S.D.N.Y. Oct. 31, 2005) (Sweet, J.) ("The 'alter ego' issue is subject to proof rather than by a motion to dismiss.").

    a.    ***NICO Has Adequately Alleged Domination and Control***

This Court has listed the factors that New York courts will consider in determining whether a parent company has exercised complete domination over its subsidiary. *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 141 F. Supp. 2d 412, 417-418 (S.D.N.Y. 2001) (Sweet, J.) (citing *Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)); *Petersen v. Vallenzano*, No. 89 Civ. 5346, 1992 U.S. Dist. LEXIS 6922, at *6-7 (S.D.N.Y. May 22, 1992) (Sweet, J.). The factors a court should consider include: (1) failure to observe corporate formalities; (2) undercapitalization; (3) intermingling of corporate funds; (4) overlap in corporate officers, directors, and personnel; (5) common office space, address and telephone numbers; (6) the amount of business discretion exercised by the subsidiary corporation; (7) whether the two companies deal with each other at arm's length; (8) whether the corporations exist as independent sources of profit; (9) the guarantee of the subsidiary's

debts by the parent; and (10) common use of corporate property. *Id.* These factors are non-exclusive. *Petersen*, 1992 U.S. Dist. LEXIS 6922, at *6.

Moreover, Plaintiffs are not required to plead or prove all factors are present before a court will pierce the corporate veil. *Petersen*, 1992 U.S. Dist. LEXIS 6922, at *7; *United States v. Nagelberg*, 772 F. Supp. 120, 124 (E.D.N.Y. 1991). *See Stahlex*, 2002 U.S. Dist. LEXIS 19854, at *20-21 (denying defendant's motion for partial summary judgment where plaintiff has established evidence pertaining to a lack of observance of corporate formalities, financial control by the parent and a lack of business discretion allowed the subsidiary); *Citicorp Int'l Trading Co. v. Western Oil & Refining Co.*, 771 F. Supp. 600, 608 (S.D.N.Y. 1991) (Sweet, J.) (refusing to dismiss Plaintiff's complaint and noting that factors such as inadequate capitalization or an intermingling of funds are not essential elements "but rather [are] factors which might be relevant to the ultimate determination of whether to pierce the veil"). Courts will impose liability in order "to reach an equitable result." *Wausau*, 141 F. Supp. at 418 (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 18 (2d Cir. 1996).

For example, in *Petersen*, domination was established where corporate formalities were not observed, the subsidiary was inadequately capitalized, and corporate funds had been used for personal purposes. *Petersen*, 1992 U.S. Dist. LEXIS 6922, at *8. Similarly, in *Conan Props., Inc. v. Mattel, Inc.*, 619 F. Supp. 1170 (S.D.N.Y. 1985), the Court found a subsidiary to be a mere instrumentality of its parent where the parent owned all of its subsidiary's stock, there was an overlap of officers and directors, funds were commingled and the parent acted in its own interest rather than act in the independent interest of its subsidiary. *Id.* at 1170. Domination has also been deemed to

exist where a plaintiff specifically alleges facts of "direct intervention by the parent in the management of the subsidiary to such an extent that 'the subsidiary's paraphernalia of incorporation, directors and officers are completely ignored.'" *Billy v. Consol. Mach. Tool Corp.*, 21 N.Y. 2d. 152, 163, 432 N.Y.S.2d 879, 887 (1980) (*citing Lowendahl v. Baltimore & O.R. Co.*, 247 A.D. 144, 155 (1st Dep't 1936), *aff'd*, 277 N.Y. 360 (1936)). By contrast, in *Bangkok Crafts Corporation v. Capitolo Di San Pietro in Vaticano*, No. 03 Civ. 0015, 2006 U.S. Dist. LEXIS 49161, at *36-38 (S.D.N.Y. Jul. 18, 2006) (Sweet, J.), the Court dismissed plaintiff's veil-piercing argument for asserting "conclusory language" as opposed to demonstrating "how [the parent] supposedly dominated [its subsidiary]." *Id.*

Contrary to Defendants' assertions, the Complaint is replete with factual allegations demonstrating how the GSC Entities dominated and controlled Stonewall and Seaton such that the Companies were rendered mere instrumentalities of these Defendants. Specifically, NICO has stated that each of the Dukes Place entities, Stonewall and Seaton, are "shell corporation[s]" that "had no employees" and that "all of their officers are employees of Castlewood." (¶¶ 13, 14, 17, 37, 118). NICO has alleged the use of corporate funds for personal purposes as evidenced by Castlewood's expenditure of "millions of dollars of Seaton's and Stonewall's funds," with the permission of the GSC Entities, in order to coerce NICO to relinquish its contract rights. (¶¶ 76-77). NICO has also alleged the agreement with Castlewood/Enstar US to share any monetary damages Seaton and Stonewall might have recovered from NICO "despite the fact that Seaton and Stonewall were funding the litigation against NICO." (¶ 79). Finally, NICO has highlighted the lack of any business discretion exercised by Stonewall

and Seaton as a result of the GSC Entities' control and domination over them. (¶ 38). For example, NICO has alleged the GSC Entities' interference in the management of their subsidiaries by directing them to enter into certain agreements (¶ 39); influencing their interactions with NICO by misrepresenting certain facts (¶¶ 57-63); master-minding the scheme of "building a case" against NICO in order to coerce NICO into relinquishing its contract rights (¶ 64); and ordering the Companies to commence new arbitrations against NICO for the very same relief denied them in the prior arbitrations. (¶ 115). These allegations of dominance and control far surpass the liberal pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure[10] and collectively establish that the GSC Entities and Dukes Place are in complete domination and control of their subsidiaries' actions.

Defendants' reliance on *American Fuel Corp. v. Utah Energy Dev. Co*, 122 F.3d 130 (2d Cir. 1997), is misplaced. In *American Fuel*, petitioners sought to bind a non-signatory to the arbitration agreement of its alleged alter ego by utilizing a veil-piercing argument. On review, the Court refused to pierce due to a lack of evidence of domination. *Id.* at 135. In that case, there was no evidence that the alter ego used the non-signatory company's funds for personal matters. *Id.* NICO, however, has established a misuse of corporate funds by Defendants GSC Entities and Dukes Place to pursue their own interests in selling the companies and forcing NICO to relinquish its contractual rights. (¶¶ 76-77; 79). The Court's refusal to pierce the corporate veil in

---

[10] *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (Sweet, J.) ("In this district, veil-piercing claims are generally subject to the pleading requirements imposed by Fed. R. Civ. P. 8(a), which requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief'"); *Citicorp*, 771 F. Supp. at 608 (holding that Rule 8(a) is satisfied where the movants have "[set] forth a short and concise statement of the facts which are necessary to support their claim to pierce the veil").

*American Fuel* also stemmed from the fact that the non-signatory was a start-up entity with "so little ongoing business that there was no need for independent accounts in its name." 122 F.3d at 135. By Defendants' own admissions, however, Seaton and Stonewall have existed for a very long period of time. (Defendants' Memo at p. 21). Notwithstanding this fact, the Companies do not operate as independent companies. (¶¶ 13, 14, 17, 37, 76-77, 79, 118).[11]

There is certainly no basis to dismiss the veil-piercing claims in this case – especially at this early pleading stage – when Defendants GSC Entities and Dukes Place have not rebutted any of these allegations. *See Citicorp*, 771 F. Supp. at 608 (Sweet, J.) (refusing to dismiss Plaintiff's complaint). Indeed, this Court in *Ross*, 2005 U.S. Dist. LEXIS 25471, at *17-19, declined defendants' motion to dismiss where the plaintiff submitted evidence in support of its alter ego allegation and held that an "'alter ego' issue is subject to proof rather than by a motion to dismiss." *Id.* at 18.

**b.** ***The Complaint Adequately Alleges that Defendants' Domination and Control Resulted in a Wrong Perpetuated Upon NICO***

---

[11] Although NICO has sufficiently plead veil-piercing liability against Defendants GSC Partners, the Greenwich Fund and Dukes Place, it is important to note that the organizational structure of some of these Defendants also subjects them to liability based on general principles of partnership law. Under Delaware law, general partners of a limited partnership are liable for the partnerships' debts and obligations. 6 Del. Code Ann. tit. § 17-403 (b) ("A general partner of a limited partnership has the liabilities of a partner in a partnership that is governed by the Delaware Uniform Partnership Law in effect on July 11, 1999 (6 Del. C. § 1501, et seq.) to persons other than the partnership and the other partners"); *Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376, 391 (D. Del. 2000) ("General partners in limited partnerships . . . are liable for the debts of the partnership."); *In re LJM2 Co-Investment, L.P. Ltd. Partners Litig.*, 866 A.2d 762, 772 (Del. Ch. 2004) ("The basic premise of limited partnership law is that general partners are personally liable for partnership obligations but limited partners are not").

Defendant Greenwich Street Capital Partners is the general partner of Greenwich Fund (¶ 10) and Defendant Dukes Place Holdings Ltd. is the general partner of Defendant Dukes Place Holdings, L.P.

(¶ 11). Therefore, Defendants Greenwich Street Capital Partners and Dukes Place Holdings Ltd., as general partners, are liable for the respective debts and obligations of Greenwich Fund and Dukes Place Holdings, L.P. The liabilities between these entities arise out of their organizational structure and not on veil-piercing.

The Complaint also adequately alleges that Defendants GSC Entities' and Dukes Place's domination and control of Seaton and Stonewall was used to cause a wrong and harm to NICO.

NICO has adequately pled how the GSC Entities and Dukes Place clearly abused the corporate form, "for [their] personal ends," in order to interfere with NICO's claims servicing rights under the Reinsurance Agreements. *See Goldblatt*, 2007 U.S. Dist. LEXIS 4278, at *17. NICO has clearly established a nexus between Defendants GSC Entities' and Dukes Place's domination and control and the resulting harm to NICO through their misuse of the corporate form to accomplish their goal. (¶¶ 2, 37-39, 57-79, 83-84, 88-94, 98-111, 114-115).

The Complaint sufficiently alleges that the Defendants' control and domination of Stonewall and Seaton, as discussed *supra*, was used to injure NICO by, *inter alia*, causing Seaton and Stonewall to pursue meritless claims against NICO, making false accusations against NICO, interfering with NICO's claims servicing rights and causing Seaton and Stonewall to breach their fiduciary duties to NICO. *See generally* pp. 6-8, *supra*. It is hypocritical for Defendants to suggest that NICO has not suffered any harm because it has not voluntarily relinquished its contractual rights under the Reinsurance Agreements, and because Defendants' attempts at subverting those rights were rejected by the arbitration panels, especially insofar as they are currently seeking to re-arbitrate those very same claims. NICO has more than sufficiently alleged a "wrong or injustice," resulting from the GSC Entities' and Dukes Place's domination and control. (¶¶ 1-2, 61-64, 81, 89, 121-122, 126-127, 136-139, 144-145).

In *Cary Oil Co. v. MG Refining & Mktg., Inc.*, 230 F. Supp. 2d 439 (S.D.N.Y. 2002), the Court held that a parent corporation's scheme to nullify its subsidiary's obligations to perform the latter's contractual obligations would easily satisfy the second prong of New York's veil-piercing test. *Id.* at 460. Just as in *Cary Oil*, the GSC Entities' and Dukes Place's actions in attempting to vitiate Seaton's and Stonewall's Reinsurance Agreements with NICO does amount to wrongful conduct. Consequently, NICO has satisfied the second prong of New York's veil-piercing test.

## CONCLUSION

For the foregoing reasons, Plaintiff National Indemnity Company respectfully submits that the Defendants' Motion to Dismiss should be denied.

Dated: September 5, 2008
      New York, New York

Respectfully submitted,

| Dewey & LeBoeuf LLP | Clyde & Co US LLP |
|---|---|
| By:   _s/ John M. Nonna_ | By:   _s/ Michael A. Knoerzer_ |
| John M. Nonna | Michael A. Knoerzer |
| 1301 Avenue of the Americas | The Chrysler Building |
| New York, New York 10019 | 405 Lexington Avenue, 11th Floor |
| (212) 259-8000 | New York, New York 10174 |
| (212) 710-3940 | (212) 710-3900 |

*Attorneys for Plaintiff National Indemnity Company*